Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ZORAIDA MARCHANY MORALES<br><br>Apelada<br><br>v.<br><br>NILDA J. MARCHANY MORALES<br><br>Apelante | KLAN202401160 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K AC2011-1291<br><br>Sobre:<br>Partición de Herencia |

Panel integrado por su presidente el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Mateu Meléndez, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

El 26 de diciembre de 2024, la Sra. Nilda Marchany Morales (en adelante, Nilda Marchany o apelante) sometió ante este Tribunal de Apelaciones un *Escrito de Apelación* en el cual nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario) con fecha del 7 de junio de 2023, notificada el mismo día. Por virtud del aludido dictamen, el TPI dividió la comunidad hereditaria habida entre las partes. Al así hacer, entre otras cosas, el foro primario estableció que la apelante adeudaba dinero al caudal hereditario y, por tanto, debía restituir las partidas que debe.

Estudiado el legajo apelativo, en virtud del derecho aplicable que más adelante consignamos, **confirmamos** la *Sentencia* apelada.

I.

La causa de epígrafe comenzó hace casi 14 años atrás, por lo que su tracto procesal es uno extenso. Por tal razón, a continuación, nos limitaremos a exponer los hechos más relevantes a los señalamientos específicos de error levantados por la apelante en su recurso.

Número Identificador

SEN2025 _____

El 17 de noviembre de 2011, Zoraida Marchany Morales (en adelante, señora Zoraida Marchany o apelada) presentó una *Demanda* sobre partición y liquidación de comunidad de bienes hereditarios en contra de la señora Nilda Marchany. En esencia, alegó que junto con la apelante, componía la sucesión del Sr. Néstor Marchany Díaz[1] (en adelante, el señor Marchany). Procedió entonces a señalar los bienes que pertenecían a su padre al momento de su muerte y enfatizó que la apelante ha administrado el caudal desde su fallecimiento sin rendir los informes.[2] Además, arguyó que esta recibía las rentas de dichas propiedades, estimándolas en $5,000.00 mensuales. Sostuvo que dichas rentas debían ser depositadas en una cuenta en común para ser co-administradas hasta tanto se efectuara la división del caudal hereditario.

Según la apelada, le solicitó a la apelante que liquidara la comunidad de bienes hereditarios, más esta se negó. A su vez, estimó que la apelante le adeudaba la suma de $16,000.00 por el periodo de tiempo que administró el caudal. Finalmente, indicó que la señora Nilda Marchany no realizó los trámites correspondientes para inscribir las propiedades en el Registro de la Propiedad. Por todo lo anterior, solicitó la liquidación de la comunidad de bienes, las ventas de los bienes, el pago de las rentas devengadas y no pagadas por la suma de $160,000.00, el pago de la participación en todos los bienes hereditarios y, la imposición de costas y honorarios de abogado.

En respuesta, el 23 de enero de 2012, la apelante presentó *Contestación a la Demanda y Reconvención* en la cual negó la mayoría de las alegaciones. Por su parte, al reconvenir, indicó que la apelada asumió una actitud de dejadez hacia la comunidad hereditaria. Afirmó haber invertido una cantidad considerable de dinero de fondos de su propio peculio para

---

[1] El Sr. Néstor Marchany Díaz falleció intestado el 18 de diciembre de 1994.

[2] Allí se señaló que el señor Marchany era dueño de un edificio en un lote comercial de dos y medio pisos, localizado en la calle Constitución #401, San Juan, Puerto Rico; un solar localizado en la calle San Vicente #9 en Mayagüez, Puerto Rico; un lote V-58 en Cementerio Porta Coeli en Bayamón, Puerto Rico; una cuenta bancaria en Banco Popular y; un certificado de acciones de Banponce Corp.

beneficio de la comunidad, por lo que esbozó tener un crédito a su favor por administrar y por los gastos incurridos para mantener las propiedades. Por último, aseveró que no interesaba permanecer como parte de la comunidad hereditaria por lo que procedía que se llevara a cabo un inventario, liquidación, división y adjudicación correspondiente. En virtud de lo anterior, solicitó se ordenara la partición a los fines de que se adjudicara a las partes sus respectivas participaciones en el caudal hereditario.

Durante los procedimientos, y por acuerdo de las partes, se nombró al CPA Pablo Morales Padillo como perito auditor. Así pues, y cónsono con lo anterior, el 16 de enero de 2015, el TPI emitió una *Orden* en la cual resolvió y ordenó lo siguiente:

> El Tribunal acoge la selección de las partes y nombra al **CPA Pablo Morales** para realizar la auditoría de los estados financieros del presente caso y presentar sus opiniones y recomendaciones. Las partes asumirán el costo de sus servicios en partes iguales. El Informe de auditoría tendrá que estar preparado y presentado en **90 días** a partir de la notificación de esta Orden.

Posteriormente, y tras varios trámites procesales, el 29 de diciembre de 2015, el foro primario emitió una *Resolución Bajo la Regla 36.4 de Procedimiento Civil*. En esta, determinó que no había controversia en cuanto a 19 hechos.

**El juicio en su fondo se celebró el 21 y 22 de julio de 2016, y el 12 de agosto de 2016**. Una vez el caso quedó sometido, el foro primario ordenó a las partes a presentar memorandos de derecho con los hechos que entendieron probados. En cumplimiento con ello, el 28 de octubre de 2016, la señora Zoraida Marchany Presentó su *Memorando de Hechos Probados y Conclusiones de Derecho*. En respuesta, la señora Nilda Marchany presentó su *Memorando de Derecho*.

Es menester señalar que, a pesar de haberse desfilado la prueba y sometido sendos memorandos, el 18 de enero de 2018, el TPI celebró una vista. Allí, aseveró que no era posible redactar una sentencia, pues no se le

había puesto en posición de así hacerlo. El tribunal enfatizó que era difícil entender lo que correspondía a cada parte y realizar determinaciones de hechos, pues los capitales se habían mezclado. De igual forma, resaltó que los informes de los auditores eran dispares, lo que también le impedía llegar a conclusiones concretas.

Así pues, es importante conocer que luego del juicio, y en búsqueda de un mejor entendimiento, el TPI celebró varias audiencias y solicitó a ambas partes: proyectos de determinaciones de hechos, un informe detallado de las propiedades a cargo de la albacea, propuestas de cuaderno particional, entre otras cosas. Igual de significativo es destacar que, luego de varias incidencias procesales, surgió que, en cuanto a los trabajos realizados para el caso, al CPA Morales se le adeudaban $51,994.10.[3] Atendido este escrito, el 29 de octubre de 2019, el TPI dictó una *Orden* advirtiéndole a las partes que debían sufragar los costos del CPA Morales y debían pagar lo adeudado previo a desembolsarse cualquier fondo.

Sobre el asunto de los honorarios del perito contable surgieron varias controversias. Así, por ejemplo, mediante *Moción en Solicitud de Orden* del 10 de octubre de 2021, Nilda Marchany, entre otras cosas, objetó la factura del CPA Morales. Específicamente, planteó haber solicitado al tribunal que se le ordenara al CPA desglosar las horas y el trabajo realizado de forma tal que se justifique el pago de unos honorarios que considera irrazonables y muy por encima de lo originalmente pactado.

De la misma forma, el 30 de marzo de 2022, Zoraida Marchany sometió una *Solicitud Urgente de Corre[cc]ión de Órdenes; Sentencia y Vista Presencial* en la que reclamó que los honorarios del perito fueron establecidos y que "[n]o es del caudal de donde se pagan los mismos y el Tribunal luego de 5 años no puede cambiar el acuerdo y la designación."

---

[3] Véase *Escrito al Expediente Judicial y Solicitud de Orden en Relación a Pago de Perito Nombrado* sometido por D'Leading Business Solutions LLC del 3 de mayo de 2019.

También se opuso a que el perito continuara realizando gestiones ante la falta de fondos disponibles.

A su vez, el 6 de mayo de 2022, el foro primario celebró una vista con el propósito de determinar a quién le correspondía sufragar los gastos con relación al trabajo de auditoría realizado por el CPA Morales. Mientras, en moción de reconsideración sometida por la apelante, esta arguyó que, según la jurisprudencia los gastos de los peritos tenían que ser razonables. Añadió que, el CPA Morales contrató con las partes por la cantidad de $19,000.00, entiéndase, el 10%. No obstante, esgrimió que este había cobrado más de $50,000.00. Aclaró que, no había más evidencia que presentar, por lo que se oponía a que este continuase como contable en el pleito. Por último, manifestó que, solicitó el cómputo de los pagos y un desglose de las horas trabajadas, pero este nunca entregó dicha información. Por todo lo anterior, solicitó que se removiera al CPA Morales como perito, impusiera honorarios de abogado y, ordenara a la señora Zoraida Marchany a realizar gestiones para el alquiler de la propiedad ubicada en Loaiza Cordero.

En fin, el 7 de junio de 2023, el foro primario notificó su *Sentencia*. Allí, reprodujo los hechos sobre los que previamente determinó no existía controversia. De la misma manera, y de conformidad con la extensa prueba documental, testifical y pericial recibida, formuló 61 hechos adicionales. En virtud de estos, y el derecho aplicable consignado, el TPI resolvió lo siguiente:

> Corresponderían $409,639.00 a cada una de las herederas, sin embargo, hay que disponer de las deudas que la demandada Nilda Marchany tiene para con los caudales relictos conjuntos.

> Además, conforme dispone el Código de Enjuiciamiento Civil al hacerse el cómputo de los honorarios de los administradores y albaceas, 32 LPRA Sec. 2491 por todos los meses que la demandada continue administrando los caudales relictos hasta el momento en que cese la administración, es decir, hasta que las sucesiones se hayan liquidado. Hay que tomar en cuenta que la demandada se adjudicaba mensualmente $600.00 que, a partir de una Orden de este Tribunal dejó de adjudicarse la partida hasta que, mediante la Orden del 6 de mayo de 2022, se le autorizó un pago de $100.00.

Si la demandada se excedió con el cobro o remuneración de la cuantía que dispone la citada sección, deberá dividir la cuantía en exceso de cada sucesión entre dos y acreditar a la demandante el 50% del exceso de cada sucesión.

Dado el hecho que la división de los bienes inmuebles y los balances de las cuentas no resuelven en su totalidad el asunto es necesario que la demandada rembolse al caudal conjunto el 50% de $126,000.00 por concepto de déficit de ingresos y el 50% de $42,600.00 correspondiente al costo de las utilidades que pagó de los caudales, cuando correspondían por contrato a los inquilinos de Constitución #401 hacerlo. Estas partidas deberán entregarlas a Zoraida Marchany.

De la partida que le corresponde a la demandante Zoraida Marchany se deducirá la partida que corresponde al 50% del canon de arrendamiento de la unidad de la Calle Carbonell en la que reside desde que se ordenó a la demandada poner a disposición de su hermana sin pago alguno de canon en junio de 2016. El canon mensual de ese apartamento o unidad de la estructura se alquilaba a razón de $900.00 mensuales antes de que lo ocupase la demandante. Ella lo ocupa desde julio de 2016, por lo que, al momento de dictarse sentencia lleva **84 meses** viviendo allí. La propiedad alquilada hubiese generado $75,600.00 que divididos entre dos corresponde a la demandante pagar $37,800.00 por lo que de la partida que se adjudica a ella hay que restarle $37,800.00.

También deberán deducirse $4,500.00 que la demandada entregó en efectivo a la demandante. Así quedó establecido durante la vista en su fondo.

La parte demandada adeuda a la demandante el 50% de las partidas ya indicadas por lo que se adjudican a la demandante las siguientes propiedades: la propiedad de la Calle Carbonell, la propiedad de la Calle Loaiza Cordero y la propiedad de la Calle San Vicente de Mayagüez, así como las partidas que se determinó corresponden a la demandante.

Se adjudica a la demandada la propiedad de la Avenida Constitución. La demandada deberá devolver el caudal conjunto las partidas que aquí se determinaron.

Una vez realizadas las operaciones particionales cada parte podrá inscribir en el Registro de la Propiedad las propiedades que se le adjudican por esta Sentencia.

Finalmente, la falta de orden en la administración de ambos caudales provocó que el pleito se alargase innecesariamente, por lo que este Tribunal condena a la parte demandada al pago de costas, gastos y $3,500.00 en concepto de honorarios de abogado.[4]

---

[4] Es meritorio señalar que además de estas determinaciones, dentro de su *Sentencia* el TPI resolvió que las facturas por la partida originalmente acordada en cuanto al perito CPA Morales corresponde a cada parte a razón de 50% cada una, pero el resto de los honorarios deberá ser sufragado por Nilda Marchany de su propio pecunio o de lo que corresponde en la liquidación de la herencia, a menos que las partidas que se le adjudiquen no cubran el pago adeudado al perito. En ese caso, el tribunal estableció que esta debería pagar de sus fondos privativos el resto de la factura. Asimismo, determinó que de la participación de la apelante se deduciría toda cantidad relativa al pago de los honorarios del CPA Iglesias, perito que esta contrató.

Inconforme, el 22 de julio de 2023, la apelante presentó una moción de *Reconsideración y Solicitud de Determinaciones de Hechos Adicionales* en la cual solicitó que el foro primario emitiera determinaciones de hechos adicionales con relación a la administración y los registros de la sucesión. Atendida la moción de reconsideración el 22 de noviembre de 2024, el foro primario la declaró No Ha Lugar. Aún inconforme, el 26 de diciembre de 2024, la señora Marchany instó el recurso de apelación de epígrafe y señaló la comisión de los siguientes cinco (5) errores:

> Erró el TPI al aceptar la metodología errónea del perito en perjuicio de la parte demandada.
>
> Erró el Honorable TPI al imponerle la totalidad en exceso del pago del perito, (acordado mediante contrato entre las partes), a la parte demandada.
>
> Erró el TPI este Honorable TPI al descansar sus determinaciones de hecho en el memorándum de hechos probados y determinaciones de derecho de la parte demandante y no en hechos probados.
>
> Erró el TPI al negar los Honorarios por albaceazgo, el cargo es uno remunerado y conlleva gestiones especiales y carga de trabajo excesiva, por lo que debe ser remunerada por hora de acuerdo con la preparación y trabajo realizado, de la albacea.
>
> Erró este Honorable TPI en la valoración del arrendamiento de Loa[i]za Cordero, utilizada por la Sra. Zoraida Marchany, demandante.

Ese día, la apelante también presentó *Moción Para Que Se Eleve el Expediente Original al Amparo de la Regla 77(B) del Reglamento del Tribunal de Apelaciones.* Posteriormente, entre otros escritos, la apelante solicitó autorización para obtener la grabación del juicio celebrado en el caso, pues la mayoría de sus señalamientos de error cuestionaban la apreciación de la prueba. El 15 de enero de 2025, emitimos *Resolución* mediante la cual, entre otras cosas, ordenamos a la apelante a tramitar la grabación de los procedimientos y concedimos plazo para presentar la transcripción estipulada.

En cuanto al resto del trámite procesal acaecido ante nos, es importante destacar que la parte apelada no estipuló la transcripción sometida por la apelante. Mediante Resolución del 5 de junio de este año,

advertimos que pasaríamos juicio sobre los documentos sometidos ante nuestra consideración, los que incluyen la transcripción presentada, y la validez de estos. El 11 de junio de 2025, la apelante sometió *Alegato Suplementario*. El 30 de junio de 20025, la apelada replicó el mismo.

II.

*A.*

Los administradores y albaceas deben formar el inventario de los bienes muebles e inmuebles pertenecientes a la sucesión del finado y fijar un plazo para que los herederos, legatarios y sus legítimos representantes concurran. Esta tarea, debe realizarse dentro de los diez (10) días del nombramiento de albacea o administrador.[5] De igual manera, y como parte de sus obligaciones, deben presentar ante el Tribunal de Primera Instancia cuentas trimestrales de las cantidades recibidas y desembolsadas. Estas, serán acompañadas de una declaración jurada y un resguardo en que conste el saldo en efecto que queda depositado en el establecimiento bancario designado por el tribunal.[6]

Cuando el albacea- o administrador- haya terminado la liquidación de los bienes, renuncie, sea separado o por cualquier otra cosa cese el desempeño de su cargo, deberá someter una cuenta final jurada y acompañada de los recibos y correspondientes resguardos. Al presentarse esta cuenta final, se citará a todas las partes interesadas en el caudal con el fin de que puedan presenciar la liquidación final de las cuentas.[7] Celebrada esta audiencia, se dictará auto definitivo aprobándose la cuenta o modificándola con cargo al albacea, pudiéndose interponer recurso de apelación contra dicho auto.[8]

---

[5] 32 LPRA Sec. 2401.
[6] Art. 587 del Código de Enjuiciamiento Civil de 1933, 32 LPRA Sec. 2511.
[7] 32 LPRA Sec. 2512.
[8] 32 LPRA Sec. 2514.

En cuanto a la controversia que hoy atendemos, nos parece importante mencionar que los albaceas, conforme el hoy derogado Código Civil de 1930, tienen todas las facultades que expresamente les hayan sido conferidas y no sean contrarias a la ley. 31 LPRA Sec. 2520.[9] Igualmente meritorio es considerar que el albacea también tiene aquellas facultades que podrían llamarse secundarias o instrumentales, que sean necesarias para el ejercicio de las otorgadas por el testador o para su normal utilización. Tous Rodríguez v. Sucn. Tous Oliver et al., 212 DPR 686 (2023), al citar a Ab Intestato Marini Pabón, 107 DPR 433, 438-439 (1978). Así, el albacea posee un rol de administración que responde en unísono a la voluntad del testador y este rol solo podría ser ejecutado por los otros herederos de no haber albacea que acepte el cargo.[10]

Similarmente, estimamos meritorio detallar sobre la administración de los bienes del finado que el administrador de estos tiene la obligación de conservar estos y procurar que den las rentas, productos y utilidades que correspondan. Para ello, podrá hacer en los edificios reparaciones ordinarias y en las fincas rústicas las labores y abono que exija el cultivo sin previa autorización.[11] No obstante, cuando tales actividades requieran desembolsos extraordinarios, deberá obtenerse un auto del juez antes de notificar por escrito a los herederos o representantes. Para obtener el auto se someterá una petición juramentada al tribunal que contenga los informes oportunos sobre la necesidad de la reparación o cultivo y monto del presupuesto de gastos.[12]

Los administradores o albaceas tienen derecho a percibir una remuneración por sus servicios. Los porcientos de esta se establecen en el

---

[9] En ausencia de una determinación específica por el causante sobre las facultades del albacea, estas serán las contempladas por el Artículo 824 del Código Civil de 1930. 31 LPRA Sec. 2521.
[10] 31 LPRA Sec. 2530.
[11] 32 LPRA Sec. 2433.
[12] 32 LPRA Sec. 2432.

Artículo 586 del *Código de Enjuiciamiento Civil de Puerto Rico de 1933*, 32 LPRA Sec. 2491, que lee de la siguiente manera:

> Todo administrador o albacea, a no disponer otra cosa el testamento bajo el cual se le nombra, tendrá derecho a percibir del caudal, en remuneración de sus servicios, el cinco por ciento (5%) de los ingresos que ocurran durante la administración, montantes a la cantidad máxima de mil (1000) dólares; el dos y medio por ciento (2.5%) cuando éstos asciendan hasta diez mil (10,000) dólares; y el uno por ciento (1%) sobre las cantidades que excediesen de diez mil (10,000) dólares. También dispondrá el juez que se abonen al administrador o albacea los gastos indispensables que ocasione la administración, incluso el costo de los anuncios, publicaciones que la ley prescriba, la conservación y guarda de los bienes, consulta de abogado y gastos de viaje.

*B.*

Es norma hartamente conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en "la apreciación de la prueba", la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Peña Rivera v. Pacheco Caraballo, 213 DPR 1009, 1011 (2024) al citar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778 (2022) y otros.

Esta deferencia judicial, está predicada en que los jueces de las salas de instancias están en mejor posición de aquilatar la prueba testifical debido a que estos tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Íd.*, al mencionar a Ortiz Ortiz v. Medtronic, *supra* a la pág. 779, y otros. La deferencia debida a los foros primarios se extiende tanto a la adjudicación de credibilidad que éstos realizan sobre los testigos que declaran ante sí, como a las determinaciones de hechos que el juzgador de hechos realiza. Pueblo v. Negrón Ramírez, 213 DPR 895, 897 (2024), al citar a Pueblo v. Toro Martínez, 200 DPR 834, 836 (2018) y otros. Sin embargo, a modo de excepción, los foros apelativos estamos en las mismas condiciones que el tribunal de instancia para intervenir y apreciar *de novo* la prueba documental que se haya presentado en un juicio. *Id.*, al citar a Díaz García v. Aponte Aponte, 125 DPR 1, 3 (1989). Así pues, la regla de deferencia

discutida se exceptúa cuando se trata de determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar este tipo de prueba y adoptar nuestro propio criterio. Pueblo v. Hernández Doble, 210 DPR 850 (2022) al citar a González Hernández v. González Hernández, 181 DPR 746 (2011).

Es menester señalar que existe error manifiesto cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones alcanzadas por el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Entiéndase pues, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Peña Rivera v. Pacheco Caraballo, *supra* a la pág. 1012. Por su parte, el concepto de pasión, prejuicio y parcialidad han sido definido como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. Pueblo v. Negrón Ramírez, *supra*, al mencionar a Ortiz Ortiz v. Medtronic, *supra* y demás casos allí citados.

Aparte de lo previamente consignado, un foro apelativo puede intervenir con las determinaciones de hechos y la apreciación de la prueba si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicarla. A tales efectos, se incurre en abuso de discreción cuando el juez: "(1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".

### III.

Tal como arriba señalamos, en su recurso de apelación la apelante señaló la comisión de cinco (5) errores.

En el primero de estos, impugna la metodología adoptada por el perito del tribunal, el CPA Pablo Morales. Por consiguiente, cuestiona la aprobación por parte del TPI del método usado por él. En síntesis, en su apelación reclama que el sistema utilizado por el CPA Morales es uno especulativo que descansa en información errónea o inaplicable. Además, alega parcialidad por parte del perito del tribunal en favor de la apelada.

Tales contenciones fueron repetidas en el alegato suplementario. Allí, la apelante recopiló todas las instancias del testimonio del CPA Pablo Morales que establecen las especulaciones señaladas que utilizó para preparar su informe. A su vez, detalló las partes del testimonio del CPA Iglesias- su perito- que derrotan la opinión del perito del tribunal y que, a su entender, demuestran que el foro primario se equivocó al acoger el informe del CPA Pablo Morales y resolver como hizo. Así pues, y en vista de que como tribunal apelativo estamos en posición de evaluar la prueba pericial, nos pide que así hagamos. A su vez, peticiona que resolvamos que la metodología a aplicarse en el caso debió ser aquella utilizada por su perito.

La apelante tiene razón al señalar que como tribunal apelativo estamos en la misma posición que el foro primario para evaluar la prueba pericial. Al así hacer, como arriba citamos, podemos inclusive adoptar nuestro propio criterio. No obstante, tras examinar concienzudamente el legajo apelativo, los documentos que conforman su apéndice y la transcripción sometida por la apelante, no estamos en posición de desviarnos del avalúo efectuado por el TPI sobre los informes y testimonios periciales. Mucho menos, acerca del valor probatorio que adjudicó a cada perito. Veamos.

Como señalamos, el foro primario tuvo el beneficio de oír el testimonio de dos (2) peritos. Estos fueron interrogados y contrainterrogados acerca del informe que cada uno de ellos preparó para el caso. Así surge de la transcripción que la apelante sometió ante nos. Ahora, como mencionamos al detallar el trámite procesal, **la reproducción sometida no fue estipulada**. Por el contrario, la parte apelada ha objetado la transcripción de los procedimientos propuesta por la apelante y en cuanto a esto, ha sometido varios escritos.[13] Su oposición descansó en que la Regla 76 del Reglamento de Apelaciones establece que la transcripción de la prueba oral sea preparada por un transcriptor autorizado, lo que no ocurrió. Asimismo, si bien reconoce que las reglas permiten que una parte prepare la transcripción, destaca que la mala calidad del sonido de las grabaciones y lo técnico de los testimonios periciales, no le permitían poder estipular el proyecto de transcripción sometido por la apelante.

Con relación al informe y a los hallazgos del CPA Pablo Morales que la apelante impugna, en su *Sentencia* el TPI consignó lo siguiente:

> En enero de 2015, el Tribunal emitió una orden para nombrar al CPA Pablo Morales, nominado por acuerdo mutuo de los abogados y de cada una de las partes para auditar y emitir una opinión sobre las gestiones de la demandada en la Sucesión Néstor Marchany Díaz de enero de 1995 a 31 de diciembre de 2014 y en la Sucesión Ada I. Morales Vélez de septiembre de 2012 a 31 de diciembre de 2014.
>
> Este Tribunal tuvo que recurrir a este mecanismo dado que la demandada no mantuvo registro contables independientes adecuados para permitir llevar a cabo la auditoria de cada una de las sucesiones.
>
> La limitación en el alcance de la auditoría es significativa y no permitió rendir una opinión precisa sobre las gestiones en cada una de las sucesiones. La prueba documental que sobre sus gestiones proveyó la demandada es insuficiente, incompleta e inexacta que no permitió al auditor perito del Tribunal aplicar estándares generalmente aceptados de contabilidad. Fue tan engorrosa,

---

[13] Así pues, el 20 de marzo de 2025, en su *Moción a Tenor con Regla 19, 20 y 76 del Reglamento Sobre Transcripción; Exposición Estipulada o Narrativa* reclamó que la transcripción que le fue enviada no había sido preparada por un transcriptor privado autorizado, sino por la representación legal de la apelante. También señaló que, si bien una parte podía preparar una transcripción, esta tenía que ser estipulada; algo que no hacía ante los errores que el proyecto de reproducción de la prueba que Nilda Marchany pretendía utilizar contenían. Igualmente, a través de la *Desestimación por Incumplimiento con Regla 19, 20 y 76 sobre [Transcripción]; Exposición Estipulada o Narrativa* que presentó el 21 de abril de 2025, reiteró estos planteamientos.

complicada y larga que obligó al auditor CPA Morales Padillo incurrir en $89,841.00 en honorarios. Los registros, documentos y cuentas no permitieron una auditoría rápida pues eran enredados, ausentes o mezclados con bienes de la demandada. Ante ello, el perito tuvo que recurrir a estimar números a base de la prueba con que contó.

Ante esta limitación significativa, el CPA Morales indicó que utilizó procedimientos de verificación alternos tales como, reconstruir los ingresos de rentas de contratos de arrendamiento y no comparar los depósitos de ingresos por la ausencia de estados bancarios. Esto requirió 900 horas de trabajo.

Posteriormente la demandada anunció al Tribunal la contratación de su propio perito que rindió un informe para impugnar el informe del CPA Morales Padillo con fecha del 19 de mayo de 2016.

Este se limitó a atacar los hallazgos y conclusiones del auditor sin rendir una opinión particular de él. En otras palabras, la demandada contrató un perito para atacar al propio perito auditor escogido y contratado por esta. No obstante, el CPA Iglesias descartó informes, números y cifras de Nilda Marchany por no ser confiables y no contar con informes financieros, evidencia de facturas y faltar documentación bancaria.

En su informe aceptó que tanto […] los ingresos como los gastos efectuados por su cliente Nilda Marchany se tuvieron que ajustar y estimar.

Concurre con el CPA Morales Padillo en la falta de documentación bancaria de aproximadamente un 85%.

Este Tribunal determina que lo correcto es que el informe del perito judicial se considere altamente persuasivo y correcto máxime cuando fueron las propias partes quienes lo escogieron. (Énfasis nuestro)

Las propias palabras del foro primario- según destacadas denotan que, para cumplir su función, **consideró ambos testimonios**.[14] Sus expresiones, también revelan que, luego de analizar la totalidad de la prueba y dirimir la credibilidad y el valor probatorio que esta le mereció, el tribunal no encontró que el CPA Iglesias hubiera cumplido con el cometido para el cual fue contratado; o sea, refutar el informe del perito del Tribunal. Dado que la transcripción sometida por la propia apelante no fue estipulada por la parte apelada, estamos impedidos de considerarla. Esta realidad, entonces, no nos coloca en posición de poder determinar si el TPI

---

[14] De hecho, la participación de la juzgadora de hechos durante el juicio en su fondo y las preguntas que formuló a los testigos durante el mismo demuestra que no tomó a la ligera su encomienda, ni la prueba desfilada.

apreció erróneamente la prueba y, por consiguiente, cometió el primer error señalado.

Procedemos pues, a atender su segundo señalamiento de error. Mediante este, la apelante impugna la decisión de imponerle a ella el pago total del exceso de honorarios del CPA Morales. Así pues, señala que durante el transcurso del pleito y desde que el perito fue contratado, el tribunal en distintas ocasiones dictaminó que los honorarios de éste serían costeados por ambas partes en igual proporción. La apelante indica que tal proporción fue sostenida en al menos diez (10) ocasiones, por lo que se convirtió en la ley del caso. Por esto, reclama que el cambio de postura en cuanto a los honorarios sin fundamento alguno es un acto arbitrario que debe ser revocado.

Basta una lectura de la sentencia apelada para entender que, contrario a lo que plantea la apelante, imponerle el pago total exclusivo de los honorarios en exceso del perito fue una decisión justa y adecuada. Un repaso del dictamen permite apreciar que la imposición de estos honorarios descansó en que el desorden, "comingling" de los fondos de ambas sucesiones provocó elevados honorarios del perito. O sea, que el aumento sustancial en el trabajo facturado por el perito era atribuible enteramente a la apelante y su desorganización sobre los bienes de ambos caudales hereditarios. Estamos de acuerdo con esta apreciación. Nos parece razonable.

El mero hecho de que durante el litigio el foro primario hubiera establecido que los honorarios del perito debían ser pagados por ambas partes en partes iguales no impide la imposición de honorarios efectuada. La imposición de honorarios tampoco queda prohibida por razón de que el tribunal se haya negado a removerla como administradora o albacea las veces que la apelada lo pidió. Mucho menos, cuando al denegar la remoción, el tribunal una vez estableció que autorizar la misma en ese

momento no era costo efectivo.[15] Entiéndase, que existieron otros factores que ocasionaron mantenerla como administradora o albacea. Habida cuenta de ello, el segundo error no fue cometido.

Tampoco se cometió el tercer error señalado por la apelante. En su apelación original la apelante afirma que el dictamen apelado no es un proyecto de sentencia, más señala que las **determinaciones** y conclusiones en él consignadas son una toma de aquellas que la apelada incluyó en su memorando de derecho. Alega que estas, no descansan en hechos probados. Debate que las partidas incluidas en la sentencia no concuerdan con los informes, **y sin mayor argumento ni cálculo en contrario**, nos pide evaluarlas. Por su parte, en su alegato suplementario, se limita a afirmar que este error está sustentado con la discusión de los demás errores y ante la alegada falta de tiempo para exponer en forma detallada, somete una tabla en la que relaciona las porciones de la sentencia que coinciden con aquellas del memorando de derecho de la apelada.

De entrada, merece señalar que los argumentos levantados por la apelante nos parecen insuficientes en derecho para derrotar las determinaciones de hechos formuladas por el TPI en su *Sentencia*. Meramente alegar que la sentencia contiene una reproducción similar a un memorando de derecho sometido por una de las partes no automáticamente impugna los hechos formulados. De otra parte, debemos recordar que las determinaciones de hechos del TPI descansan en los hechos que el foro primario estimó probados. Al no habérsenos colocado en posición de considerar la transcripción de la apelante, los hechos determinados deben respetarse, debiéndose entender que el tercer error no fue cometido.

Procedemos ahora a atender el cuarto señalamiento de error de la apelante en el que impugna la cantidad que el TPI concedió por concepto

---

[15] Véase, págs. 207-208 del Apéndice.

de honorarios por albaceazgo. Según ella, el tribunal concedió la paga de $100.00 mensuales bajo el entendido de que no hubo administración. Por ello, detalla las distintas gestiones que durante años realizó para administrar las sucesiones, según detallo durante su testimonio en el juicio en su fondo. De igual forma, argumenta que la cantidad que reclama por el trabajo que realizó como albacea y administradora se estimó a base de salario por hora de acuerdo con las guías de empleo. También reclama que estos ingresos se encuentran muy por debajo de lo que cobraría un arquitecto licenciado como ella por tales funciones. Así, reclama que el caudal se benefició de su conocimiento especializado en arquitectura, por lo que hubo un enriquecimiento injusto.

En adición, y contra la cantidad concedida por la administración y el albaceazgo, la apelante arguyó que habiéndose resuelto durante el pleito en varias ocasiones que no procedía su separación del cargo de albacea como solicitó la apelada, era claro que se resolvió que no hubo una mala administración. Por todas estas razones, y al considerar que las labores de administración y supervisión de empleados, entre otros, sobrepasan los $100.00 mensuales otorgados para cada sucesión, postula que esta compensación debe ser ajustada de forma tal que sea remunerada por hora de acuerdo con la preparación y el trabajo realizado.

Evaluados estos argumentos, encontramos que los mismos son contrarios al derecho. Tales planteamientos ignoran que el Código de Enjuiciamiento establece la compensación que el albacea recibirá. Así pues, el Artículo 586 del aludido Código establece que todo administrador o albacea- a menos que otra cosa se disponga en testamento- tendrá derecho a percibir del caudal en remuneración de sus servicios: un cinco por ciento (5%) de los ingresos que ocurran durante la administración, montantes a la cantidad máxima de $1,000 dólares; el dos punto cinco por ciento (2.5%)

cuando estos asciendan hasta $10,000 dólares; y el uno por ciento (1%) sobre las cantidades que excediesen esta última cantidad.[16]

Habiéndose establecido por ley la compensación a la que la apelante tiene derecho, vemos que cualquier reclamo para una compensación basada en salario por hora es improcedente en derecho. Ante un decreto legal tan claro, igual de inadecuado es todo planteamiento de su parte en favor de una remuneración mayor basada en el título de arquitecta que ostenta la apelante. Por estas razones, tampoco se cometió el cuarto error.

Similar conclusión alcanzamos en cuanto al quinto y último error. En cuanto a este, en su escrito original, la apelante discute lo siguiente:

> Los inquilinos de la propiedad de Loaiza Cordero pagaban la cantidad de $850.00 a $900.00 en el año 2015. Que la propiedad ubicada en Carbonell utilizada por la demandante genera más ingresos por renta que lo establecido por este Tribunal, por lo que se requiere una valoración real de ambas propiedades, conforme al mercado. Son dos propiedades, la demandante se ocupó de desahuciar a la inquilina del primer piso, (la cual llevaba años viviendo allí) y a pesar de las órdenes del tribunal, no permitió la entrada allí, interrumpió el alquiler, y tampoco alquiló la propiedad. (Ap. 240, 241, 237F, 250, inciso 37 sentencia ap. 284)

Mientras, y sobre el mismo, en su alegato suplementario añade lo que a continuación transcribimos:

> Ya que los hechos que dan base a este error, ocurren después del juicio en su fondo, nos limitaremos a lo expresado en la apelación y corrija el crédito por la utilización de la parte demandante de las dos propiedades del caudal, incluyendo el primer piso, que por error se omitió, y se ajusten las mismas al valor en el mercado de cada una de ellas, además se otorgue el crédito por el 50% de la deuda del CRIM, por el cual la demandante negligentemente ha dejado de solicitar la exoneración contributiva. Elimine los honorarios de abogado a la parte demandada y le sean impuestos a la parte demandante, por su temeridad, en conjunto con las costas y los intereses.

Al leer estos escuetos argumentos, rápidamente identificamos que éstos son insuficientes en derecho para alterar las determinaciones de hechos formuladas por el TPI y aquellas conclusiones que en virtud de la prueba que recibió alcanzó. Mediante estos no demostró la presencia de

---

[16] 32 LPRA Sec. 2491.

error manifiesto, prejuicio, parcialidad o pasión, por lo que nuestra intervención con la apreciación de la prueba es vedada.

Debido a que del expediente tampoco surgen indicios de abuso de discreción ni de que el foro primario se equivocó en la interpretación o aplicación de una norma procesal o de derecho sustantivo, la sentencia apelada merece nuestra deferencia. Ninguno de los errores se cometió.

IV.

Por los fundamentos aquí expuestos, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones